# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

Philip Mejia,

      Petitioner,

          v.

United States of America,

      Respondent.

:
:
:
:
:
:
:
:
:

Criminal No.

3:03-cr-101 (DJS)

## MOTION FOR MODIFICATION OF AN IMPOSED TERM OF IMPRISONMENT PURSUANT TO 18 USC § 3582 (c)(2)

Philip Mejia
Reg. No. 15095-014
FCI Fort Dix (East)
P.O. Box 2000
Fort Dix, New Jersey
       08640

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF CONNECTICUT


Philip Mejia,                    :
        Petitioner,              :
                                 :
                                 :          Criminal No.
        v.                       :
                                 :          3:03-cr-101 (DJS)
                                 :
United States of America,        :
        Respondent.              :
                                 :


MOTION FOR MODIFICATION OF AN IMPOSED TERM OF
IMPRISONMENT PURSUANT TO 18 USC § 3582 (c)(2)

        Comes Now, Philip Mejia,Petitioner, filing pro se,
and respectfully requests this Honorable Court to consider a
reduction in petitioner's current sentence, and in support
thereof would state the following for the record.

    18 USC § 3582 (c)(2) states that, "in the case of a defendant
who has been sentenced to a term of imprisonment based on a
sentencing range that has subsequently been lowered by the
Sentencing Commission pursuant to 28 U.S.C. 994(o), upon motion
of the defendant or the Director of the Bureau of Prisons, or on
its own motion, the court may reduce the term of imprisonment,
after considering the factors set forth in section 3553(a) to
the extent that they are applicable, if such a reduction is
consistent with applicable policy statements issued by the
Sentencing Commssion."

## BRIEF PROCEDURAL HISTORY

Petitioner was arrested on March 3, 2003.  Petitioner pled guilty to count two of a six-count indictment.  Count two charged Petitioner with possession with intent to distribute and distribution of 50 grams or more of Cocaine Base, in violation of 21 USC §§ 846 and 841(a)(1) and (b)(1)(A).  Count one, three, four, five and six were dismissed on the motion of the government at sentencing.

On December 8, 2003, Petitioner appeared before the Honorable Dominic J. Squatrito and was sentenced to a term of imprisonment of 120 months, to be followed by a term of supervised release for five years, and a special assessment of $100.00.  In sentencing Petitioner, the Court departed from the guidelines range based upon a combination of factors that made Petitioner's case extraordinary pursuant to **Koon v. U.S,** 518 U.S. 81 (1996).

No direct appeal was taken and no § 2255 was filed in Petitioner's case.

## STATEMENT OF RELEVANT FACTS

Petitioner has received only one incident report during the more than five years he has been in Federal Bureau of Prisons custody.  Petitioner's conduct, as a whole, has been nothing short of commendable and is an indicator of Petitioner's conduct and frame of mind while incarcerated.  (please see Exhibit "A", attached).

Petitioner has been studying very hard so that he may obtain a GED. Petitioner now awaits testing after being deemed ready by the Education Department. Petitioner has taken advantage of the programs offered by the Bureau of Prisons, to acquire much needed vocational skills, to address some of his personal problems and to get some help with his drug problem as well. Petitioner is hoping to one day return to society with the ability to make a positive contribution. (please see attached Exhibit "B").

Petitioner acknowledges this Honorable Court's discretion in determining whether it will elect to impose the new-calculated sentence and respectfully looks to this court for a measure of compassion in his case.

Compassion is a feeling of deep sympathy and sorrow ( not cold blaming) for another's suffering or misfortune, accompanied by a desire to alleviate the pain or remove its cause. Compassion is sympathetic concern for the suffering of another, together with the inclination to give aid or support or to show mercy.

## COCAINE BASE AMENDMENT

On May 1, 2007, Pursuant to 28 U.S.C. § 994(a) and (p), the United States Sentencing Commission (the "Commission") submitted to Congress amendments to the Federal Sentencing guidelines that, absent congressional action to the contrary, would become effective November 1, 2007. One of those amendments, now officially designated as amendment 706, which pertains to offenses involving cocaine base ("crack") has the effect of lowering the guideline sentencing range for certain categories of offenses and offenders, did become effective November 1, 2007.

The crack cocaine amendment adjusts downward by two levels the base offense level assigned to each threshold quantity of crack cocaine listed in the Drug Quantity Table in § 2D1.1 (unlawful Manufacturing, Importing, Exporting, or Trafficking (Including Possession with Intent to commit these offenses); Attempt or Conspiracy).

The amendment also addresses how to determine the base offense level in a case involving cocaine base and other controlled substances. Prior to the amendment, there was a mathematical relationship among all drug types that was used to structure both the Drug Quantity Table and the Drug Equivalency Tables. As a result, the marihuana equivalencies set forth in Drug Equivalency Tables could be used to determine the base offense level in any case involving differing controlled substances. By restructuring the Drug Quantity Table for

( 4 )

cocaine base offenses only, the amendment will alter the mathematical relationship between cocaine base and other drug types to varying degrees throughout the Drug Quantity Table. The amendment, therefore, provides an alternative method for determining the combined offense level in an offense involving cocaine base and other drugs.

## LEGAL FRAMEWORK FOR RETROACTIVELY REDUCING
## SENTENCES BASED ON GUIDELINE AMENDMENTS

(STATUTORY AUTHORITY)

The Commission is statutorily authorized to determine whether a guideline amendment that reduces the sentencing range may be retroactively applied.  Section 994(u) of title 28 United States Code, specifically provides that:

> [i]f the Commission reduces the term of imprisonment recommended in the guidelines applicable to a particular offense or category of offenses, it shall specify in what circumstances and by what amount the sentences of prisoners serving terms of imprisonment for the offense may be reduced.

Furthermore, sentencing courts are statutorily precluded from applying a guideline amendment retroactively unless the Commission has designated such amendment for retroactive application.  Section 3582(c)(2) of title 18, United States Code provides that the court may not modify a term of imprisonment once it has been imposed except that

> in the case of a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently

(5)

been lowered by the Sentencing Commission
pursuant to 28 U.S.C. 994(o),... the court
may reduce the term of imprisonment, after
considering the factors set forth in section
3553(a) to the extent that they are
applicable, if such a reduction is consistent
with applicable policy statements issued by
the Sentencing Commission.

The Commission identified as a policy priority for the
amendment cycle ending May 1, 2007, "continuation of its work
with the congressional, executive, and judicial branches of the
government and other interested parties on cocaine sentencing
policy," including reevaluating the Commission's 2002 report to Congress,
Cocaine and Federal Sentencing Policy. As a result of the Anti-
Drug Abuse Act of 1986, Pub. L. 99-570, 21 USC § 841(b)(1)
requires a five-year mandatory minimum penalty for first time
trafficking offenses involving 5 grams or more of crack cocaine,
or 500 grams of powder cocaine, and a ten-year mandatory minimum
penalty for first time trafficking offenses involving 50 grams or
more of crack cocaine or 5,000 grams or more of powder cocaine.
Because 100 times more powder cocaine than crack cocaine is
required to trigger the same mandatory minimum penalty, this
penalty structure is commonly referred to as the "100-to-1 drug
quantity ratio"."

To assist the Commission in its consideration of Federal
cocaine sentencing policy, the Commission received statements
and heard expert testimony from the Executive branch, the
Federal judiciary, defense practitioners, state and local law enforcement

(6)

representatives, medical and treatment experts, academicians, social scientists, and interested community representatives at hearings on November 14, 2006, and March 20, 2007.  The Commission also received substantial written public comment on Federal cocaine sentencing policy throughout the amendment cycle.

During the amendment cycle, the Commission updated its analysis of key sentencing data about cocaine offenses and offenders; reviewed recent scientific literature regarding cocaine use, effects, dependency, prenatal effects, and prevalence; researched trends in cocaine trafficking patterns, price, and use; surveyed the state laws regarding cocaine penalties; and monitored case law developments.

Current data and information continue to support the Commission's consistently held position that the 100-to-1 drug quantity ratio significantly undermines various congressional objectives set forth in the Sentencing Reform Act and elsewhere. These findings have been more thoroughly explained in a report that was presented to Congress, on or before May 15, 2007, and a number of recommendations for modifications to the statutory penalties for crack cocaine offenses.  It is the Commission's firm desire that this report will facilitate prompt congressional action addressing the 100-to-1 drug quantity ratio.

The Commission's recommendation and strong desire for prompt legislative action notwithstanding, the problems associated with the 100-to-1 drug quantity ratio are so urgent and compelling that this amendment is promulgated as an interim measure to alleviate some of those problems.  The Commission has concluded that the manner in which the Drug Quantity Table in §2D1.1 (Unlawfull Manufacturing, Importing, Exporting, or Trafficking (Including

Possession with Intent to Commit These Offenses); Attempt or Conspiracy)) was constructed to incorporate the statutory mandatory minimum penalties for crack cocaine offenses is an area in which the Federal sentencing guidelines contribute to the problems associated with the 100-to-1 drug quantity ratio.

When Congress passed the 1986 Act, the Commission responded by generally incorporating the statutory mandatory minimum sentences into the guidelines and extrapolating upward and downward to set guideline sentencing ranges for all drug quantities. The drug quantity thresholds in the Drug Quantity Table are set so as to provide base offense levels corresponding to guideline ranges that are <u>above</u> the statutory mandatory minimum penalties. Accordingly, offenses involving 5 grams or more of crack cocaine were assigned a base offense level (level 26) corresponding to a sentencing guideline range of 63 to 78 months for a defendant in Criminal History Category I (a guideline range that exceeds the five-year statutory minimum for such offenses by at least three months). Similarly, offenses involving 50 grams or more of crack cocaine were assigned a base offense level (level 32) corresponding to a sentencing guideline range of 121 to 151 months for a defendant in Criminal History Category I(a guideline range that exceeds the ten-year statutory minimum for each offense by at least one month). Crack cocaine offenses for quantities above and below the mandatory minimum threshold quantities were set accordingly using the 100-to I drug quantity ratio.

This amendment modifies the drug quantity thresholds in the Drug Quantity Table so as to assign, for crack cocaine offenses, base offense levels corresponding to guideline ranges that <u>include</u>

the statutory mandatory minimum penalties.  Accordingly, pursuant to the amendment, 5 grams of cocaine base are assigned a base offense level 24 (51 to 63 months at Criminal History Category I, which includes the five-year (60 month) statutory minimum for such offenses), and 50 grams of cocaine base are assigned a base offense level of 30 (97 to 121 months at Criminal History Category I, which includes the ten-year (120 month) statutory minimum for such offenses).  Crack cocaine offenses for quantities above and below the mandatory minimum threshold quantities similarly are adjusted downward by two levels.  The amendment also includes a mechanism to determine a combined base offense level in an offense involving crack cocaine and other controlled substances.

The Commission's prison impact model predicts that, assuming no change in the existing statutory mandatory minimum penalties, this modification of the Drug Quantity Table will affect 69.7 percent of crack cocaine offenses sentenced under §2D1.1 and will result in a reduction in the estimated average sentence of all crack cocaine offenses from 121 months to 106 months, based on an analysis of cases sentenced in fiscal year 2006 under §2D.1 involving crack cocaine.

Having concluded once again that the 100-to-1 drug quantity ratio should be modified, the Commission recognized that establishing federal cocaine sentencing policy ultimately is Congress's prerogative.  Accordingly, the Commission tailored the amendment to fit within the existing statutory penalty scheme by assigning base offense levels that provide guideline ranges that include the statutory mandatory minimum penalties for crack cocaine offenses. The Commission, however, views the amendment only as an interim

solution to some of the problems associated with the 100-to-1
drug quantity ratio.  It is neither a permanent nor a complete
solution to those problems.  Any comprehensive solution to the
100-to-1 drug quantity ratio requires appropriate legislative
action by Congress.

### GUIDELINES MANUAL POLICY STATEMENT

To implement 28 U.S.C § 994(u) and to provide guidance for
a court when considering a motion under 18 U.S.C § 3582(c)(2),
the Commission promulgated § 1B1.10 (Reduction in Term of
Imprisonment as a Result of Amended Guideline Range)(Policy
Statement).  Subsection (a) of § 1B1.10 specifies when an 18 USC
§ 3582(c)(2) reduction is available:

> Where a defendant is serving a term of
> imprisonment, and the guideline range
> applicable to that defendant has subsequently
> been lowered as a result of an amendment to
> the Guidelines Manual listed in subsection(c)
> below, a reduction in the defendant's term of
> imprisonment is authorized under 18 USC § 3582
> (c)(2).  If none of the amendments listed in
> subsection(c) is applicable, a reduction in
> the defendant's term of imprisonment under 18
> USC § 3582(c)(2) is not consistent with this
> policy statement and thus is not authorized.

Application Note 1 further states:

> Eligibility for consideration under 18 USC § 3582
> (c)(2) is triggered only by an amendment listed
> in subsection (c) that lowers the applicable
> guideline range.

Listing an amendment in §1B1.10(c) reflects policy

determinations by the Commission that a reduced guideline range is sufficient to achieve the purpose of sentencing and that, in the sound discretion of the court, a reduction in the term of imprisonment may be appropriate for previously sentenced, qualified defendants. <u>See</u>, USSG §1B1.10, Background. The background commentary further provides that authorization of such a discretionary reduction does not otherwise affect the lawfulness of a previously imposed sentence, does not authorize a reduction in any other component of the sentence, and does not entitle a defendant to a reduced term of imprisonment as a matter of right.

Among the factors considered by the Commission in selecting the amendments included in subsection (c) are the purpose of the amendment, the magnitude of the change in the guideline range made by the amendment, and the difficulty of applying the anmendment retroactively to determine an amended guideline range under subsection (b).

In addition to specifying which guideline amendments may be retroactively applied, consistent with 28 USC § 3582(c)(2). Section (b) of §1B1.10 states:

> In determining whether, and to what extent, a reduction in the term of imprisonment is warranted for a defendant eligible for consideration under 18 USC § 3582(c)(2), the court should consider the term of imprisonment that it would have imposed had the amendment(s) to the guidelines listed in subsection (c) been in effect at the time the defendant was sentenced... <u>See</u>, USSG §1B1.10(b).

Commentary further directs how courts should proceed on 18

(11)

U.S.C. § 3582(c)(2).

## POLICY STATEMENT § 1B1.10

(c)  All amendments covered by this policy statement are listed in Appendix C as follows: 126, 130, 156, 176, 269, 329, 341, 371, 379, 380, 433, 454, 461, 484, 488, 490, 505, 591, 599, 606, and 657.  For Amendment 706, <u>See</u> following retroactivity section.

### COMMENTARY

**APPLICATION NOTES:**

2.   In determining the amended guideline range under subsection (b), the court shall substitute only the amendments listed in subsection (c) for the corresponding guideline provisions that were applied when the defendant was sentenced.  All other guideline application decisions remain unaffected.

3.   Under subsection (b), the amended guideline range and the term of imprisonment already served by the defendant limit the extent to which an eligible defendant's sentence may be reduced under 18 USC § 3582(c)(2).  When the original sentence represented a downward departure, a comparable reduction below the amended guideline range may be appropriate; however, in no case shall the term of imprisonment be reduced below time served.  Subject to these limitations, the sentencing court has the discretion to determine whether, and to what extent, to reduce a term of imprisonment under this section.

The listing of an amendment in subsection(c) reflects a policy determination by the Commission that a reduced guideline range is sufficient to achieve the purpose of sentencing and that, in the sound discretion of the court, a reduction in the term of imprisonment may be appropriate for previously sentenced, qualified defendants.  The authorization of such a discretionary reduction does not otherwise affect the lawfulness of a previously imposed

sentence, does not authorize a reduction in any other component of
the sentence, and does not entitle a defendant to a reduced term
of imprisonment as a matter of right.

## RETROACTIVITY

The United States Sentencing Commission unanimously voted on
December 11, 2007, to give retroactive effect to a recent amendment
to the Federal Sentencing Guidelines that reduces penalties for
crack cocaine offenses.  Retroativity of the crack cocaine amendment
will become effective on March 3, 2008.  Not every crack cocaine
offender will be eligible for a lower sentence under the decsion. A
Federal Sentencing Judge will make the final determination of
whether an offender is eligible for a lower sentence and how much
that sentence should be lowered.  That determination will be made
only after consideration of many factors, including the Commission's
direction to consider whether lowering the offender's sentence
would pose a danger to public safety.  In addition, the overall
impact is anticipated to occur incrementally over approximately 30
years, due to the limited nature of the guideline amendment and the
fact that many crack cocaine offenders will still be required under
Federal law to serve mandatory five-or ten year sentences because
of the amount of crack involved in their offense.

On November 1, 2007, after a six-month congressional review
period, the Commission's amendment to the Federal sentencing
guidelines for crack cocaine offenses took effect.  The amendment
was intended as a step toward reducing some of the unwarranted
disparity currently existing between Federal crack cocaine and
powder cocaine sentences.  The Sentence Reform Act of 1984

specifically authorized the Commission to provide for retroactive effect of amendments that result in lower penalties for classes of offenses or offenders, as this amendment could.

The Commission made its decision on retroactivity of the crack cocaine amendment after months of deliberation and years of examining cocaine sentencing issues.  It solicited public comment on the issue of retroactivity and received over 33,000 letters or written comments, almost all of which were in favor of retroactivity. In November, the Commission held a full-day hearing on the issue of retroactivity and heard from key stakeholders in the federal criminal justice community.  The Commission considered a number of factors during its deliberations, including the purpose for lowering crack cocaine sentences, the limit on any reduction allowed by the amendment, whether it would be difficult for the courts to apply the reduction, and whether making the amendment retroactive would raise public safety concerns or cause unwarranted sentencing disparity in the federal system.  Ultimately, the Commission determined that the statutory purpose of sentencing are best served by retroactive application of the amendment.  Mindful of public safety and judicial resource concerns, the Commission issued direction to the courts on the limited nature of this and all other retroactive amendments and on the need to consider public safety in each case.  The Commission delayed the effective date of its decision on retroactivity in order to give the courts sufficient time to prepare for and process these cases.

The Commission's action, as well as promulgation of the original amendment for crack cocaine offenses, are only a partial step in mitigating the unwarranted sentencing disparity that exists

between Federal powder and crack cocaine defendants.  <u>The Commission</u>
<u>has continued to call on Congress to address the issue of the 100-</u>
<u>to-1 statutory ratio that drives Federal cocaine sentencing policy.</u>
<u>Only Congress can provide a comprehensive solution to a fundamental</u>
<u>unfairness in Federal sentencing policy.</u>  The Commission has
consistently expressed its readiness and willingness to work with
Congress and others in the criminal justice community to address
this very important issue.

On December 10,2007, the Supreme Court of the United States
decided <u>Kimbrough v. United States,</u> 552 U.S. ____(2007), wherein,
the high Court weighed in on its view of the disproportionate and
unjust effect that crack cocaine guidelines have in sentencing.

Under the relevant statutes, Kimbrough's plea subjected him
to a minimum prison term of 15 years ( a mandatory minimum of 10
years for the crack cocaine and a mandatory minimum of 5 years for
the gun, statutorily mandated to be imposed consecutive to any
other sentence imposed ) and a maximum of life.  The applicable
advisory guideline range was 228 to 270 months, or 19 to 22.5 years.
The District Court found, however, that a sentence in this range
would have been greater than necessary to accomplish the purposes
of sentencing set forth in 18 U.S.C. § 3553 (a).  In making that
determination, the Court relied in part on its view that Kimbrough's
case exemplified the " Disproportionate and unjust effect that
crack cocaine guidelines have in sentencing."  The Court noted that
if Kimbrough had possessed only powder cocaine, his guideline range
would have been far lower: 97 to 106 months.  Concluding that the
statutory minimum sentence was long enough to accomplish § 3553(a)'s
objectives, the Court sentenced Kimbrough to 15 years, or 180

months, in prison.

After the Fourth Circuit vacated the sentence, finding that a sentence outside the guideline range was Per se unreasonable when it is based on a disagreement with the sentencing disparity for crack and powder offenses, the U.S. Supreme Court reversed and remanded.

In its ruling, the Supreme Court held, in part, that under **United States v. Booker**, 543 U.S. 220, the Cocaine guidelines, are advisory only. Crack and powder cocaine have the same physiological and psychotropic effects, but are handled very differently for sentencing purposes. The relevant statutes and guidelines employ a 100-to-1 ratio that yields sentences for crack offenses three to six times longer than those for offenses involving equal amounts of powder. Thus, a major supplier of powder may receive a shorter sentence than a low-level dealer who buys powder and converts it to crack.

Further, the High Court held that the crack cocaine guidelines do not exemplify the Commission's exercise of its characteristic institutional role. Given the Commission's departure from its empirical approach in formulating the crack guidelines and its subsequent criticism of the crack/powder disparity, it would not be an abuse of discretion for a District Court to conclude when sentencing a particular defendant that the crack/powder disparity yields a sentence "greater than necessary" to achieve §3553(a)'s purposes, even in a mine-run case.

The Court also discussed the Sentencing Commission's finding that the differential fosters a lack of confidence in the criminal

justice system because of a perception that it promotes an unwarranted divergence based on Race.

In considering a motion for resentencing under § 3582, the Court has discretion to determine whether it will elect to impose the newly-calculated sentence under the amended guidelines or to retain the original sentence. See, United States v. Turner, 59 F.3d 481, 483-84 (4th Cir. 1995)(recognizing that the application of a retroactive amendment is discretionary). This decision should be made in light of the factors listed in 18 USC § 3553(a). See, United States v. Legree, 205 F.3d 724,727 (4th Cir. 2000).

### CONCLUSION:

WHEREFORE, Petitioner respectfully prays this Honorable Court would hold his pleadings to less stringent standards that pleadings drafted by lawyers, that it would pardon his inartistic manner and overlook his many errors. Petitioner acknowledges this Honorable Court's discretion in this matter. He respectfully requests that this Court apply amendment 706 to Petitioners case. The retroactive effective date for amendment 706 has been set by the Sentencing Commission as March 3, 2008. The Commission delayed the effective date of its decision on retroactivity in order to give the courts sufficient time to prepare for and process these cases, Therefore, Petitioner respectfully requests that this Honorable Court hold his motion in abeyance until the effective date of March 3, 2008. Petitioner is cognizant of the fact that the ruling by the Supreme Court in Kimbrough does not apply to his case because his case is final, nevertheless, Petitioner humbly requests that this Honorable

Court considering the reasoning in <u>Kimbrough</u>, as well as, the information contained in the Statement of Relevant Facts in his motion when fashioning a new sentence in Petitioner's case.

A defendant who was originally sentenced to a mandatory minimum was "sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered." 18 USC § 3582(c)(2). This is because, under USSG § 1B1.1, each Chapter of the Guidelines is applied in order. The guideline range under USSG § 2D1.1 is determined in steps(a)-(g) before it is enhanced in step(h) under USSG § 5G1.1 or 5G1.2 See USSG § 1B1.1.

If USSG § 1B1.10 were interpreted to mean that if the defendant was "sentenced to a term of imprisonment solely because of a sentencing range that has subsequently been lowered," The court "may reduce the term of imprisonment," this would conflict with § 3582(c)(2) itself, which provides that if the defendant was "sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered," it "may reduce the term of imprisonment," The statute trumps the policy statement. <u>Stinson v. United States</u>, 508 US 36,38 (1993). Any policy statements regarding § 3582(c) must be "consistent with all pertinent provisions of any Federal statute," which certainly includes the statute it is implementing. 28 USC § 994(a)(2)(C).

In the interest of conserving valuable government and judicial resources, Petitioner respectfully requests that should this Honorable Court exercise its discretion in granting him the relief he seeks, that the Court would issue an amended Judgment and Commitment Order, thereby negating the additional cost of

transporting him to and from the court, and the additional cost of housing him during transit.

In the interest of conserving valuable government and judicial resources, Petitioner respectfully requests that should this Honorable court exercise its discretion in granting him the relief he seeks, that the court would issue an amended Judgment and Commitment Order, thereby negating the additional cost of transporting him.

Petitioner prays this Honorable Court would grant him all relief to which he may be entitled, and all relief this Honorable Court might deem just and proper.

Respectfully Submitted,

Date: 5/20/08          .

Philip Mejia
Reg. No. 15095-014
FCI Fort Dix (East)
P.O. Box 2000
Fort Dix, New Jersey 08640

(19)

## CERTIFICATE OF SERVICE

I, Philip Mejia  ,certify that on May 20, 2008, I mailed a complete copy of this motion via first class mail, postage pre-paid, to the following parties at the addresses listed below.

> Thomas V. Daily
> Assistant U.S. Attorney
> Office of the U.S. Attorney
> Abraham Ribicoff Federal Building
>    and U.S. Courthouse                    ;
> 450 Main Street
> Hartford, Ct. 06103

I certify that this motion was hand delivered to prison officials on the date listed below for forwarding to the District Court.  I certify under the penalties of perjury that the forgoing is true and correct, pursuant to 28 USC § 1746.

Date: 5/20/08           .

Philip Mejia
Reg. No. 15095-014
FCI Fort Dix (East)
P.O. Box 2000
Fort Dix, New Jersey
          08640

EXHIBIT A

```
   FTDK4  540*23 *              SENTENCE MONITORING          *      05-12-2008
   PAGE 001          *           COMPUTATION DATA            *      09:46:55
                                 AS OF 05-12-2008
```

REGNO..: 15095-014 NAME: MEJIA, PHILIP


```
FBI NO...........: 641433AC0        . DATE OF BIRTH: 06-21-1975
ARS1.............: FTD/A-DES
UNIT.............: UNIT 3            QUARTERS.....: E03-392L
DETAINERS........: NO               NOTIFICATIONS: NO
```

PRE-RELEASE PREPARATION DATE: 07-22-2011

THE FOLLOWING SENTENCE DATA IS FOR THE INMATE'S CURRENT COMMITMENT.
THE INMATE IS PROJECTED FOR RELEASE:  01-22-2012 VIA GCT REL

----------------------CURRENT JUDGMENT/WARRANT NO: 010 -----------------------

```
COURT OF JURISDICTION...........: CONNECTICUT
DOCKET NUMBER...................: 3:03CR101 (DJS)
JUDGE..........................: SQUATRITO
DATE SENTENCED/PROBATION IMPOSED: 12-08-2003
DATE COMMITTED..................: 02-05-2004
HOW COMMITTED...................: US DISTRICT COURT COMMITMENT
PROBATION IMPOSED...............: NO
```

```
                   FELONY ASSESS  MISDMNR ASSESS  FINES           COSTS
NON-COMMITTED.:    $100.00        $00.00          $00.00          $00.00
```

RESTITUTION...: PROPERTY: NO  SERVICES: NO     AMOUNT: $00.00

----------------------CURRENT OBLIGATION NO: 010 --------------------------
OFFENSE CODE....:  391
OFF/CHG: 21:846 & 841(A)(1) & (B)(1)(A)(III) POSS WITH INTENT TO DIST &
         DIST OF 50 GRAMS OR MORE OF COCAINE BASE (CT 2).

```
SENTENCE PROCEDURE.............: 3559 PLRA SENTENCE
SENTENCE IMPOSED/TIME TO SERVE.:  120 MONTHS
TERM OF SUPERVISION............:    5 YEARS
CLASS OF OFFENSE...............: CLASS A FELONY
DATE OF OFFENSE................: 04-03-2003
```


G0002        MORE PAGES TO FOLLOW . . .

```
   FTDK4  540*23 *              SENTENCE MONITORING            *    05-12-2008
PAGE 002 OF 002 *              COMPUTATION DATA               *    09:46:55
                                AS OF 05-12-2008
```

REGNO..: 15095-014 NAME: MEJIA, PHILIP


------------------------CURRENT COMPUTATION NO: 010 -----------------------

COMPUTATION 010 WAS LAST UPDATED ON 04-12-2006 AT RBK AUTOMATICALLY

THE FOLLOWING JUDGMENTS, WARRANTS AND OBLIGATIONS ARE INCLUDED IN
CURRENT COMPUTATION 010: 010 010

DATE COMPUTATION BEGAN..........: 12-08-2003
TOTAL TERM IN EFFECT............:   120 MONTHS
TOTAL TERM IN EFFECT CONVERTED..:    10 YEARS
EARLIEST DATE OF OFFENSE........: 04-03-2003

JAIL CREDIT.....................:      FROM DATE      THRU DATE
                                     04-02-2003     12-07-2003

TOTAL PRIOR CREDIT TIME.........: 250
TOTAL INOPERATIVE TIME..........: 0
TOTAL GCT EARNED AND PROJECTED..: 435
TOTAL GCT EARNED................: 230
STATUTORY RELEASE DATE PROJECTED: 01-22-2012
SIX MONTH /10% DATE.............: N/A
EXPIRATION FULL TERM DATE.......: 04-01-2013


PROJECTED SATISFACTION DATE.....: 01-22-2012
PROJECTED SATISFACTION METHOD...: GCT REL


S0055    NO PRIOR SENTENCE DATA EXISTS FOR THIS INMATE

```
FTDK4  542*22 *              SENTENCE MONITORING            *      05-12-2008
PAGE 001 OF 001 *            GOOD TIME DATA                 *      09:47:07
                            AS OF  05-12-2008

REGNO...: 15095-014     NAME: MEJIA, PHILIP
ARS 1...: FTD A-DES                                 PLRA
COMPUTATION NUMBER..: 010                    · FUNC..: PRT   ACT DT:
LAST UPDATED:  DATE.: 04-12-2006               FACL..: RBK     CALC: AUTOMATIC
UNIT................: UNIT 3                    QUARTERS...........: E03-392L
DATE COMP BEGINS....: 12-08-2003               COMP STATUS........: COMPLETE
TOTAL JAIL CREDIT...: 250                       TOTAL INOP TIME....: 0
CURRENT REL DT......: 08-14-2012 TUE           EXPIRES FULL TERM DT: 04-01-2013
PROJ SATISFACT DT...: 01-22-2012 SUN           PROJ SATISF METHOD..: GCT REL
ACTUAL SATISFACT DT.:                          ACTUAL SATISF METHOD:
DAYS REMAINING......:                          FINAL PUBLC LAW DAYS:

------------------------------GOOD CONDUCT TIME AMOUNTS--------------------------

   START        STOP        MAX  POSSIBLE TO      ACTUAL TOTALS    VESTED    VESTED
   DATE         DATE        DIS     FFT         DIS    FFT        AMOUNT     DATE
04-02-2003   04-01-2004     54      54
04-02-2004   04-01-2005     54     108
04-02-2005   04-01-2006     54     122          40        ·
04-02-2006   04-01-2007     54     176
04-02-2007   04-01-2008     54     230
04-02-2008   04-01-2009     54
04-02-2009   04-01-2010     54
04-02-2010   04-01-2011     54
04-02-2011   01-22-2012     43


    TOTAL EARNED AMOUNT........................................:       230
    TOTAL EARNED AND PROJECTED AMOUNT..........................:       435
```

G0005     TRANSACTION SUCCESSFULLY COMPLETED - CONTINUE PROCESSING IF DESIRED

# EXHIBIT B

```
PAGE 001              *       INMATE EDUCATION DATA        *    05-13-2008
                      *          TRANSCRIPT                *    14:11:10

REGISTER NO: 15095-014        NAME..: MEJIA                    FUNC: DIS
FORMAT.....: TRANSCRIPT       RSP OF: FTD-FORT DIX FCI

------------------------- EDUCATION INFORMATION -------------------------
FACL ASSIGNMENT DESCRIPTION                    START DATE/TIME STOP DATE/TIME
FTD  ESL HAS    ENGLISH PROFICIENT             02-09-2004 1616 CURRENT
FTD  GED EN     ENROLL GED NON-PROMOTABLE      04-09-2004 1514 CURRENT
FTD  GED SAT    GED PROGRESS SATISFACTORY      08-28-2007 0001 CURRENT

-------------------------- EDUCATION COURSES --------------------------
SUB-FACL   DESCRIPTION                    START DATE  STOP DATE EVNT AC LV  HRS
FTD  GP    GED E ADV RM239 M-F 1400-1530  11-27-2007  CURRENT
FTD  GP    RPP1-HEALTH                    05-07-2008  CURRENT
FTD  GP    RPP2 JOB                       05-07-2008  CURRENT
FTD  GP    RPP3 FINANCE                   05-07-2008  CURRENT
FTD  GP    RPP4 HALFWAY HOUSE             05-07-2008  CURRENT
FTD  GP    RPP4 US  PROBATION OFFICER     05-07-2008  CURRENT
RBK        GED M-F 930-1100, X4163        07-30-2007  08-31-2007  P  W  I  242
RBK        GED M-F 730-930, X4163         10-16-2006  07-30-2007  C  W  I    0

G0002      MORE PAGES TO FOLLOW . . .
```

```
PAGE 002 OF 002  *              INMATE EDUCATION DATA          *    05-13-2008
                  *                   TRANSCRIPT               *    14:11:10

REGISTER NO: 15095-014          NAME..: MEJIA
FORMAT.....: TRANSCRIPT         RSP OF: FTD-FORT DIX FCI        FUNC: DIS

------------------------------ EDUCATION COURSES ------------------------------
SUB-FACL    DESCRIPTION                      START DATE  STOP DATE  EVNT AC LV  HRS
RBK         HOBBYCRAF/WED6:30-8PM/X4172      02-23-2007  04-09-2007  P   C  P   12
RBK         GED/COMPUTER M-F 730-930 X4168   09-26-2006  10-16-2006  C   W  I    0
RBK         COMPUTER GED CLASS M-F 1230PM    09-14-2006  09-26-2006  P   W  I    0
RBK CAD M   COMPUTER GED CLASS M-F 1230PM    03-13-2006  05-30-2006  P   W  I    2

------------------------------ HIGH TEST SCORES -------------------------------
TEST        SUBTEST          SCORE      TEST DATE     TEST FACL    FORM     STATE
ABLE        LANGUAGE          9.0      08-17-2007     RBK          E
            NUMBER OPR       11.2      04-04-2007     RBK          F
            PROB SOLV         9.4      12-13-2006     RBK          E
            READ COMP        13.0      12-13-2006     RBK          E
            SPELLING          6.8      12-13-2006     RBK          E
            VOCABULARY        9.3      12-13-2006     RBK          E


G0005      TRANSACTION SUCCESSFULLY COMPLETED - CONTINUE PROCESSING IF DESIRED
```